# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES P. BYRNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 681 |
| | ) | |
| | ) | |
| PAYBYCHECK.COM LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Ronald W. Ehli's ("Ehli") motion to vacate. For the reasons stated below, we deny the motion to vacate.

## BACKGROUND

Plaintiff James P. Byrne ("Byrne") alleges that in October 1999 Interactive Technologies, Inc. ("Interactive") needed cash to meet its current operating expenses and sought a loan from Byrne. Byrne contends that, pursuant to a loan agreement ("Loan Agreement"), he extended loans to Interactive that totaled $887,500. According to Byrne, Ehli has been an officer or in some position of authority for Interactive, Defendant PayByCheck.com LLC ("PayByCheck"), Defendant ITI

1

Internet Services, Inc. ("ITI"), Defendant HIMC Corporation ("HIMC"), Defendant ITIX Corporation ("ITIX"), Defendant Ehli Development ("EDV'), and Defendant Electronic Zombie Corporation ("EZC"). Byrne claims that Ehli attempted to avoid repaying the funds that Interactive owes under the Loan Agreement by transferring assets from Interactive to PayByCheck, ITI, HIMC, ITIX, EDV, and EZC, which Byrne contends are mere continuations of Interactive under new names. Byrne includes in his complaint a breach of contract claim based on an alleged breach of the Loan Agreement (Count I), a quantum meruit claim (Count II), and an unjust enrichment claim (Count III). Byrne executed service upon Ehli on May 6, 2006, and since Ehli had not filed a responsive brief to the complaint, on June 6, 2006, we granted Byrne's motion for default against Ehli. On August 8, 2006, we granted Byrne's motion for default judgment in sum certain against Ehli. Ehli now moves this court to vacate the entry of the default judgment against him.

**LEGAL STANDARD**

A party seeking the vacation of a default judgment due to lack of personal jurisdiction must proceed under Federal Rule of Civil Procedure 60(b)(4) ("Rule 60(b)(4)"), and if a district court determines that it lacks personal jurisdiction the court must vacate the default judgment. Fed. R. Civ. P. 60(b)(4); *Homer v. Jones-Bey*, 415 F.3d 748, 752-53 (7th Cir. 2005)(explaining that "[i]f the district court had no jurisdiction over the movant, its judgment is void and it is an abuse of discretion to deny the movant's request to set aside the judgment under Rule 60(b)"); *Bally*

*Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir. 1986). Rule 60(b)(4) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding" because "the judgment is void . . . ." Fed. R. Civ. P. 60(b)(4). The relief obtained under Rule 60(b)(4) "is an extraordinary remedy and is granted only in exceptional circumstances." *Bally Export Corp.*, 804 F.2d at 400.

## DISCUSSION

Ehli argues that the default judgment entered against him is void because this court lacks personal jurisdiction over him. Byrne alleges in his complaint that the sole basis for subject matter jurisdiction in this case is diversity subject matter jurisdiction, and Ehli has not contested that point. (Compl. Par. 10). In a federal court action based solely upon diversity subject matter jurisdiction, the court "must rely on the law of personal jurisdiction that governs the courts of general jurisdiction in the state where the court is sitting." *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Since we sit in Illinois we shall apply Illinois law. Under Illinois law, a court has personal jurisdiction over a party if personal jurisdiction is consistent with Illinois State constitutional law and Federal constitutional law. *Id.*; *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000)(noting that the Illinois long-arm statute permits the exercise of personal jurisdiction consistent with the Illinois and Federal constitutions); *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th

3

Cir. 1997).

I. Federal Constitutional Limits

In regards to Federal constitutional limits, Federal due process requirements determine when a court "may exercise personal jurisdiction over nonresident defendants." *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 549 (7th Cir. 2004)(explaining that due process law is intended to "allow[ ] potential defendants to structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit"). A court may only exercise personal jurisdiction over a defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR, Inc.*, 107 F.3d at 1277 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The two types of personal jurisdiction are specific jurisdiction and general jurisdiction. *Jennings,* 383 F.3d at 549. In the instant action, Byrnes argues that Ehli is subject to both specific jurisdiction and general jurisdiction.

Specific jurisdiction is personal jurisdiction over a defendant in an action "arising out of or related to the defendant's contacts with the forum." *RAR, Inc.,* 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984)). For the personal jurisdiction analysis, a court must "focus on whether it is fundamentally fair to require the defendant to submit to the jurisdiction of the court with respect to this litigation." *Purdue Research Found. v. Sanofi-*

*Synthelabo, S.A.,* 338 F.3d 773, 780 (7th Cir. 2003)(citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980) and *International Shoe,* 326 U.S. at 316-17). The court must consider "foreseeability" by the defendant, meaning whether "the defendant could have anticipated being haled into the courts of the state with respect to the matter at issue." *Purdue Research Found.*, 338 F.3d at 780. In assessing such forseeability, it is the defendant's conduct that is pertinent because "it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Id.* In other words, it must be established that the "defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id.*

Ehli argues that he does not reside in Illinois, transact business in Illinois, own property in Illinois, or own any interest in any entity doing business in Illinois. Ehli contends that the Loan Agreement was initiated in the State of Washington and was signed by Ehli on behalf of Interactive in Washington. On the other hand, Byrne has provided affidavits and other support for his contention that Ehli had many business contacts with the State of Illinois that related to the Loan Agreement. Byrne contends that he is an Illinois resident and that an investment banker, acting on behalf of Ehli, contacted Byrne in Illinois in the fall of 1999 and asked Byrne to invest in and/or finance Interactive. (B Ex. 1 Par. 4, 7). Byrne contends that during the negotiations of the Loan Agreement, Ehli repeatedly contacted Byrne by phone while Byrne was in Illinois. (B Ex. 1 Par. 8). Byrne also contends that the Loan Agreement included provisions that indicated that the loan repayments would be sent

to Illinois. (B Ex. 1 Par. 12). Byrne also claims that during the loan period, Ehli contacted Byrne in Illinois by letter correspondence, telephone, fax, and email, to discuss matters such as proposed business plans and sales reports. (B Ex. 1 Par. 16). Byrne also contends that Ehli made multiple trips to Illinois in the spring and summer of 2000 to meet with Byrne and other parties to secure additional financing. (B Ex. 1 Par. 21-22). Byrne also claims that during such contacts with Byrne in Illinois, Ehli indicated that Interactive would repay Byrne in accordance with the terms of the Loan Agreement. (B Ex. 1 Par. 17-18, 22). Finally, Byrne claims that he sent wire transfers from, and drew checks against, a corporate bank account in an Illinois bank and sent the wire transfers and checks from Illinois. (B Ex. 1 Par. 25).

Ehli was given until November 16, 2006 to file a reply brief in support of his motion to vacate and Ehli did not file a reply brief. Thus, Ehli has not contested any of the assertions made by Byrne in his answer to the motion to vacate. It is clear that Ehli is not connected to Illinois solely through unilateral contacts made by Byrne. Rather, the facts show that Ehli actively solicited business with an Illinois resident and repeatedly had contacts with Illinois in regards to the Loan Agreement. Byrne has also shown that Ehli frequently had contacts with Illinois and that the contacts were directly related to the controversy presented in the instant action. Ehli conducted business activities with Byrne in Illinois and Ehli clearly "could have anticipated being haled into" a court in Illinois to account for his alleged misconduct. *Purdue Research Found.*, 338 F.3d at 780. Therefore, we conclude that the exercise of personal jurisdiction over Ehli in this action is consistent with federal

constitutional limits. We note that since we have found that there is specific personal jurisdiction over Ehli we need not determine whether Ehli is also subject to general personal jurisdiction for all matters within this state.

II. Illinois Constitutional Limits

Under Illinois law, a court in Illinois can have personal jurisdiction over a party "only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990). As is explained above, a solicitor acting on behalf of Ehli contacted Byrne in Illinois to make a business proposal. Ehli entered into the Loan Agreement with Byrne, an Illinois resident. Ehli also repeatedly contacted Byrne during the negotiations of the Loan Agreement and during the loan period. Such contacts include phone calls, emails, and in-person visits. Thus, it is fair and just for Ehli to be subject to personal jurisdiction in Illinois. We conclude that the exercise of personal jurisdiction over Ehli is consistent with Illinois constitutional limits. Therefore, based on the above we deny the motion to vacate.

**CONCLUSION**

Based on the foregoing analysis, we deny Ehli's motion to vacate.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 29, 2006